NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY BASKE,<br><br>Plaintiff,<br><br>v.<br><br>PUBLIC SERVICE ELECTRIC & GAS a/k/a PSE&G,<br><br>Defendant. | Civil Action No.: 16-105 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant Public Service Electric & Gas a/k/a PSE&G's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Local Federal Rule of Civil Procedure 56.1. (ECF No. 27). Plaintiff Jeffrey Baske has submitted an opposition (ECF No. 33), which Defendant has replied to (ECF Nos. 34-35). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Defendant's Motion for Summary Judgment.

# I. BACKGROUND[1]

## A. The Parties

Plaintiff is a New Jersey resident who was employed by Defendant. (ECF No. 1-1 ¶ 1; Def. SMF ¶ 1). Defendant is a utility company in New Jersey that has, *inter alia*, a "certain business premises operated as a motor vehicle repair facility located" in Edison, New Jersey. (ECF No. 1-1 ¶ 2).

## B. Pertinent Facts

Prior to the time period relevant to this action, Plaintiff was employed by Defendant as a seasonal storeroom employee at Defendant's Sewaren, New Jersey location. (Def. SMF ¶ 3). On August 18, 2014, Plaintiff was hired by Defendant as a fulltime employee at Defendant's auto mechanic shop, and was assigned to Defendant's "Fleet Maintenance Center" in Edison, New Jersey. (Id. ¶¶ 1-2). Under the collective bargaining agreement in place between Defendant and its employees' union, Plaintiff's position was subject to a one-year probationary period. (Id. ¶ 4). During this one year period, "probationary employees may be discharged for any reason, including safety and work performance issues," as well as absence from work. (Def. SMF ¶ 5; Pl. Opp. SMF ¶ 5).

Plaintiff's duties "included repair of vehicles and hydraulics, as well as preventative maintenance ("PM") on trucks, trailers, forklifts and other machinery." (Def. SMF ¶ 6). "Plaintiff

---

[1] These background facts are taken from the parties' statements of material facts, pursuant to Local Civil Rule 56.1. (ECF No. 27-1, Defendant's Rule 56.1 Statement of Material Facts ("Def. SMF"); ECF No. 33-2, Plaintiff's Rule 56.1 Statement of Material Facts ("Pl. SMF"); ECF No. 33-1, Plaintiff's Responses to Defendant's Statement of Material Facts ("Pl. Opp. SMF"); ECF No. 35, Defendant's Responses to Plaintiff's Statement of Material Facts ("Def. Opp. SMF")). To the extent that Plaintiff admits any Material Facts as stated by Defendant, the Court will cite only to "Def. SMF" and the relevant paragraph number. The Court will "disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement which extend beyond statements of facts." *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, 2005 U.S. Dist. LEXIS 27820, at *10 (D.N.J. Nov. 10, 2005); *see also* L. Civ. R. 56.1 ("Each statement of material facts . . . shall not contain legal argument or conclusions of law.").

2

would[,] on occasion[,] be paired with other mechanics to complete various projects in the shop, including work on aerial lifts, diggers or bucket trucks." (Id. ¶ 7). "The hydraulic aerial lifts are used to move [Defendant's] employees in buckets to heights of between 45 to 110 feet in the air to enable them to perform work on electric lines and equipment." (Id. ¶ 8).

Defendant asserts that Plaintiff failed to "understand the criticality of the work he was being asked to perform, had a lackadaisical work ethic, took too long to complete tasks, and generally lacked focus on the work being performed on equipment that other employees depended upon to keep them safe." (Id. ¶ 9).[2] While Defendant asserts that after these observations its supervisors began to "spot-check" Plaintiff more frequently, the deposition testimony in this case seems to indicate that these "spot-checks" were occurring since Plaintiff's first day of employment. (Def. SMF ¶ 10; Pl. Opp. SMF ¶ 10). Defendant avers that during the aforementioned time period Defendant's supervisors "had several informal conversations with Plaintiff regarding the unacceptable quality of his work, his lack of focus, the excessive amount of time he spent on assigned tasks and the need for him to improve in those areas," but Plaintiff denies same and testified that "he did not recall ever being spoken to by any supervisor about him allegedly wandering away from his work area, his work ethic, the length of time it took for him to complete

---

[2] The Court notes that Plaintiff's Response to Defendant's Statement of Undisputed Material Facts responds to Def. SMF ¶ 9 in the following manner: "Denied, but admitted only to the extent that Mr. Gameiro was 'confirming' at his deposition the alleged accuracy of [Defendant's] Answer to Plaintiff's Interrogatory no. 2 ..." *See* Pl. Opp. SMF ¶ 9. However, Plaintiff fails to provide any real explanation as to why he denies this statement and nowhere within Plaintiff's Response to Defendant's Statement of Undisputed Material Facts or Plaintiff's own Statement of Undisputed Material Facts is there any explanation as to why Defendant denies this statement. (*See* Pl. Opp SMF; Pl. SMF). Accordingly, the Court treats the statements contained at Def. SMF ¶ 9 as undisputed. *See* L. Civ. R. 56.1(a) ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; *any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion*.") (emphasis added).

tasks, or any facet of his job performance that was alleged to have not met expectations." (Def. SMF ¶ 11; Pl. Opp. SMF ¶ 11) (emphasis in original). Defendant also asserts that Plaintiff would "'straighten up a little bit,' but would soon revert to his unacceptable behavior."[3] Defendant goes on to list various other occasions where Plaintiff was allegedly inadequate at his job, all of which Plaintiff denies, and notes that said statements are derived from self-serving deposition testimony and not corroborated by any other evidence. (Def. SMF ¶¶ 14-29; Pl. Opp. SMF ¶¶ 14-29).

Defendant also asserts that on April 23, 2015, its managers had a weekly meeting where they discussed "Plaintiff's ongoing performance issues." (Def. SMF ¶¶ 29-30). Accordingly, Defendant supposedly prepared a termination letter on that date, but said letter was dated May 2, 2015. (Id. ¶¶ 31-32) Plaintiff once against denies these allegations noting that no evidence has been produced to support said occurrence. (Pl. Opp. SMF ¶¶ 29-32).

Thereafter, on April 26, 2015, Plaintiff was injured in a non-work related motorcycle accident. (Def. SMF ¶ 34). Due to his injuries, Plaintiff called out sick on April 27, 2015. (Id. ¶ 35). Thereafter, Plaintiff sought leave pursuant to the Family and Medical Leave Act ("FMLA"). (Id. ¶ 36). Defendant's third-party servicer provided Plaintiff with the requisite forms, which he completed and returned. (Id. ¶¶ 37-39). Plaintiff's FMLA leave was approved from April 30, 2015 through May 30, 2015. (Id. ¶ 40). Later, Plaintiff received notice that the days of April 28 and 29 were also approved, retroactively. (Id. ¶ 45). On May 31, 2015, Plaintiff was cleared to return to work. (Id. ¶ 49).

According to Defendant, none of its employees contacted Plaintiff while he was out on FMLA leave and his termination was put off until Plaintiff could in fact return to work. (Id. ¶¶ 48,

---

[3] For the same reasons set forth at n. 2, *supra*, the Court shall treat this statement as undisputed.

50). Plaintiff disputes this assertion and notes that he was contacted by Defendant's union shop steward, who "acted in the nature of a supervisor." (Pl. Opp. SMF ¶ 50). Moreover, Plaintiff says that he was in contact with his union, and was advised that Defendant was contemplating terminating Plaintiff because he "wasn't showing up for work." (Pl. Opp. SMF ¶ 51-52). This assertion is in direct contravention of Defendant's statements that no one from Defendant ever told Plaintiff he was going to be terminated as a result of his leave. (Def. SMF ¶¶ 51, 53-54).

Plaintiff returned to work on June 1, 2015, and his return was without any physical restrictions. (Def SMF ¶¶ 59-60). Upon his return, Plaintiff was assigned to work in the stock room and not as a mechanic. (Pl. Opp. SMF ¶ 61; Pl. SMF ¶ 16; Def. Opp. SMF ¶ 16). The assignment to the stock room was temporary and Plaintiff was reassigned as an auto mechanic. (Id.; id.; id.). On that same day, Defendant conducted a "consensus call," which was attended by Defendant's various supervisors and managers. (Pl. SMF ¶ 17). The calendar note for the call stated it was regarding: "Probationary employee failing to qualify. He has been out ill since 4/28/15." (Id. ¶ 18). The note does not mention Plaintiff's quality of work and ambiguously refers to Plaintiff's "failure to qualify." (Id.). Plaintiff was discharged on June 4, 2015. (Pl. SMF ¶ 19).

Against the aforementioned background, Plaintiff brought this action asserting the following claims: Count I – "FMLA Violation" (*i.e.* FMLA interference claim); Count II – "FMLA Retaliation;" and Count III – Violation of New Jersey's Law Against Discrimination ("NJLAD"). (ECF No. 1 ¶¶ 7-25). The essence of Plaintiff's Complaint is that Defendant terminated him because he opted to take FMLA leave after he was injured. (*See generally* ECF No. 1).

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## III. ANALYSIS

### A. FMLA Interference and FMLA Retaliation Claims

The Court finds that, because there are genuine issues of material fact, Defendant is not entitled to summary judgment. The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period ... [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA also provides that "any eligible employee who takes leave under section 2612 of [the FMLA] ... shall be entitled, on return from

such leave—(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a). Employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter [of the FMLA]." 29 U.S.C. § 2615(a). Thus, under the FMLA, an employee may bring claims against an employer for: 1) interference with his right to twelve weeks of medical leave, and/or 2) retaliation premised upon the employer's failure to restore the employee to the position he held before taking medical leave/failure to reinstate.

"To prevail on an FMLA interference claim, the employee merely needs to show she was entitled to benefits under the FMLA and that she was denied them." *Thurston v. Cherry Hill Triplex*, 941 F. Supp. 2d 520, 526 (D.N.J. 2008) (citing *Parker v. Hahnemann Univ. Hosp.*, 234 F. Supp. 2d 478, 485 (D.N.J. 2002)). A plaintiff must show the following to assert a successful FMLA interference claim: 1) he or she is an eligible employee under the FMLA; 2) the defendant is an employer who is subject to FMLA requirements; 3) the plaintiff was entitled to FMLA leave; 4) the plaintiff gave proper notice to the defendant of his or her intention to take FMLA leave; and 5) the defendant denied the plaintiff any FMLA benefits that plaintiff was entitled to. *See Parker*, 234 F. Supp. 2d at 483. By contrast, to "[t]o assert a retaliation claim, a plaintiff must demonstrate that: (1) he or she is protected under the FMLA, (2) he or she suffered an adverse employment action, and (3) the adverse action was causally related to the plaintiff's exercise of his or her FMLA rights." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009) (quoting district court below) (internal quotations omitted). The burden of articulating a legitimate, non-discriminatory

7

rationale then shifts to the employer, after which the employee must meet his burden in demonstrating that the reasons for termination offered by the employer were merely a pretext for unlawful discrimination. *Bearley v. Friendly Ice Cream Corp.*, 322 F. Supp. 2d 563, 572-73 (M.D. Pa. 2004).

Preliminarily, as to the interference claim, the parties do not dispute the first four prongs of *Parker* are met in this case. (ECF No. 27-2 ("Def. Mov. Br.") at 15-19; ECF No. 33 ("Pl. Opp. Br.") at 6). The Court agrees with the parties and therefore need not further analyze same. Accordingly, the only question left before the Court with respect to the interference claim is whether Defendant did in fact interfere with Plaintiff's rights under the FMLA.

According to Plaintiff, Defendant interfered with Plaintiff's FMLA rights in three ways: 1) Plaintiff "did not receive the required notice of his rights [under the FMLA] in a timely manner" because same was received two weeks after Plaintiff notified Defendant of his intent to take FMLA leave; 2) Plaintiff was not returned to his prior position; and 3) Plaintiff "was pressured to resign ... while he was on leave ... and was wrongfully terminated within one week of returning from his leave." (Pl. Opp. Br. at 6-7). Defendant disputes these assertions by claiming that it was Defendant's intention to terminate Plaintiff prior to taking FMLA leave and therefore his subsequent termination was a result of his poor work performance and in no way related to Plaintiff's leave. (Def. Mov. Br at 14-19).

After review of the parties submissions, the Court cannot conclude that Defendant is entitled to summary judgment in this matter. Even if the Court were to accept Defendant's assertion that the notice was made as timely as possible, and that the notice was sent by a third-party servicer over whom Defendant had no control of, and that the reassignment to the store room

was merely temporary due to the fact that Defendant was short staffed, a genuine issue of material fact exists with regard to the reason for Plaintiff's termination.

The record before the Court is comprised mainly of deposition testimony. Conflicting deposition testimony alone is insufficient to warrant summary judgment. *See Gonzalez v. Sec'y Dep't Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (quoting *Kirleis v. Dickie, McCarney & Chilcote, P.C.*, 530 F.3d 156, 161 (3d Cir. 2009)); *see also United States v. 717 S. Woodward St.*, 2 F.3d 529, 533 (3d Cir. 1993) ("a bare but sworn assertion of a claimant's lack of knowledge will not suffice to create a material dispute of fact *where that assertion is impeached by a well supported showing to the contrary*.") (emphasis added).

All of the deposition testimony cited by the parties herein, both by Plaintiff and Defendant, contains nothing more than conclusory, self-serving statements. (*See, e.g.*, ECF Nos. 27-5-6 at Exhibits B-D; ECF No. 30-3 at Exhibit A). Defendant attempts to support its position by pointing to documentary evidence, but that evidence also is insufficient. For example, Defendant relies on a handwritten note that appears to be written on a notepad, and with no letterhead or any insignia that would identify the origin of same. (ECF No. 27-6 at Exhibit E). That note reads as follows: "[h]eld expectational meeting with [Plaintiff] in regards to his PM on truck UT 1250. Spoke to him about being thorough on PM + reading sheet + checking unit correctly. Also told him he did a good job on engineer placement on UU13505." (Id.). While Defendant may argue that this handwritten note shows Plaintiff was performing poorly, the Court is left with more questions than answers. First, there is no explanation of what an "expectational meeting" entails. Even if the Court were to accept Defendant's discussion of an expectational meeting (*i.e.*, that these meetings are utilized when an employee is performing subpar work) the note itself says Plaintiff was

excelling in some aspect of his job. This note alone cannot be the foundation for dismissal of Plaintiff's claims, especially when this Court must review the evidence in a light most favorable to Plaintiff.

Similarly, Defendant's next piece documentary evidence is also insufficient. The evidence is another, unidentifiable handwritten note that says: "Spoke to Jeff about time on trailer pm[.] Too much time + need to improve." (Id. at Exhibit F). Once again, this handwritten note creates more question than clarity. Defendant's third and final piece of documentary evidence suffers from the infirmities as the first two. That last handwritten statement is on note paper that bears a "Quality Auto Glass" logo and reads: "Spoke to Jeff in regards to the time he took to install driveshaft on UU1989[.] Too much time – needs to improve." (Id. at Exhibit G). None of these documents tend to show that Plaintiff was "wandering away from his station" or that he took a "lackadaisical approach to his work," as Defendant argues.

Accordingly, the Court finds that a genuine issue of material fact exists as to why Plaintiff was terminated, since the Court cannot conclude from the record before it that Plaintiff was in fact performing poorly. Moreover, Plaintiff's own testimony seems to indicate that learned from his union that his extended absence was the basis for his termination. Hence, a genuine issue of material fact is present as to the reasons for Plaintiff's termination. In other words, whether Plaintiff was terminated because of work performance or because he exercised his right to FMLA leave is a question for a jury. Therefore, the Court must deny Defendant's summary judgment motion as to Count I.

The same is true for Plaintiff's FMLA retaliation claim, since the Court cannot ascertain whether Plaintiff was terminated for cause or whether the termination was a result of Plaintiff's

FMLA leave. Without this critical piece of information, the Court cannot ascertain whether or not Plaintiff was in fact terminated in retaliation for taking FMLA leave. Hence, the Court must deny Defendant's summary judgment motion as it pertains to Count II.

### B. NJLAD Claim

For similar reasons, the Court must also deny Defendant's motion as to Plaintiff's NJLAD claims. The starting point for an action brought pursuant to the NJLAD is the framework outlined by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 300 (3d Cir. 2004) ("The Supreme Court of New Jersey has explained the three-step burden shifting analysis 'as a starting point' for analysis of claims under the NJLAD.") (citing *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 210, 723 A.2d 944 (N.J. 1999)). The three-step *McDonnell Douglas* analysis proceeds as follows. First, a plaintiff must establish a *prima facie* case of discrimination. *Monaco*, 359 F.3d at 300. To establish a *prima facie* case of discriminatory discharge under the NJLAD, a plaintiff must demonstrate: 1) that he is a member of a protected class; 2) that he was otherwise qualified and performing the essential functions of the job; 3) that he was terminated; and 4) that the employer thereafter sought similarly qualified individuals for the job who were not members of his protected class. *See Victor v. State*, 203 N.J. 383, 408-09 (2010).

Assuming a plaintiff meets the *prima facie* case, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. *Monaco*, 359 F.3d at 300. Finally, if the defendant meets its burden, the plaintiff must then "discredit the defendant's proffered reason for its action or adduce evidence that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.*

The Court finds that the record contains sufficient evidence such that Plaintiff can defeat Defendant's motion for summary judgment. First, Plaintiff has set forth sufficient evidence that a reasonable fact finder could find him disabled. Indeed, NJLAD defines a handicapped person as one who suffers from a "physical disability ... which is caused by bodily injury ... which prevents the normal exercise of any bodily or mental functions." N.J.S.A. 10:5-5(q). The disability need not be permanent nor substantial to qualify for NJLAD protection. *See Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 547 (D.N.J. 2000). Hence, for purposes of this motion, the Court finds that a genuine issue of material fact exists as to whether Plaintiff was disabled for NJLAD purposes, and that a reasonable jury could conclude he was in fact disabled for NJLAD purposes.

Also, as discussed, a genuine issue of material fact exists with regard to whether Plaintiff was "otherwise qualified and performing the essential functions of the job." Indeed, the record as it stands at this time leaves this prong indeterminable. While Defendant asserts that Plaintiff was a poor employee, the record itself does not equivocally show that this was true. As a matter of fact, one of Defendant's own documents indicates Plaintiff was completing, at the very least some, tasks satisfactorily. Furthermore, Plaintiff rebuts this argument with deposition testimony and the fact that the termination letter that Defendant purportedly prepared prior to Plaintiff's injury is dated May 2, 2015, which is nine days after the accident and three days after Plaintiff's FMLA leave was approved. Hence, this issue also must be submitted to a jury for determination. Moreover, there is no need to analyze the third prong as there is no dispute that Plaintiff was terminated and satisfies same. Finally, neither party addresses the fourth prong, and the Court will not superimpose its own arguments on behalf of the parties as to why the fourth prong has or has not been met. Regardless, the Court finds that Defendant has failed to meet its summary judgment

burden with respect to Plaintiff's NJLAD claim as there are numerous genuine issues of material fact that must be submitted to a jury. Accordingly, the Court denies same.

## IV. **CONCLUSION**

For the aforementioned reasons, Defendant's Motion for Summary Judgment is denied. An appropriate Order accompanies this Opinion.

DATED: February 14, 2018

JOSE L. LINARES
Chief Judge, United States District Court